## CIRCUIT COURT OF THE CITY OF RICHMOND

In re Travis Alan Ashe,
an infant

### January 3, 1995

BY JUDGE RANDALL G. JOHNSON

This is a proceeding for the approval of an infant settlement pursuant to Va. Code § 8.01-424. At a hearing on December 19, 1994, the court indicated that it would approve the settlement, but took under advisement plaintiff's additional request for a reduction of certain liens under Va. Code § 8.01-66.9. That section, which gives the Commonwealth, its programs, institutions, and departments a lien for medical services rendered to, or payments made on behalf of, an injured person, also provides, in pertinent part, as follows:

> The court in which a suit by an injured person or his personal representative has been filed against the person, firm or corporation alleged to have caused such injuries or in which such suit may properly be filed, may, upon motion or petition by the injured person, his personal representative or his attorney, and after written notice is given to all those holding liens attaching to the recovery, reduce the amount of the liens and apportion the recovery, whether by verdict or negotiated settlement, between the plaintiff, the plaintiff's attorney, and the Commonwealth or such Department or institution as the equities of the case may appear, provided that the injured person, his personal representative or attorney has made a good faith effort to negotiate a compromise pursuant to § 2.1-127. The court shall set forth the basis for any such reduction in a written order.

The injuries in this case are serious. Plaintiff, who is now eight years of age, was injured in an automobile accident on April 27, 1990. As a result of the accident, plaintiff now suffers from post traumatic brain injury which is manifested by severe attention deficit, hyperactivity, seizures, staring, and problems with sleep. He will need long-term care, including future medical treatment. The settlement is for $95,000, which represents

all but $5,000 of the insurance available to pay the claim. Another $4,000 has already been paid under one of the defendant's medical payments coverage.

Plaintiff's total medical bills, as of December 14, 1994, are $141,067.98. Of that amount, all but $4,197.82 has been paid by insurance or Medicaid. In fact, Medicaid, which has paid $31,126.73 to healthcare providers on behalf of plaintiff, owns one of the liens which plaintiff seeks to reduce. The other lien which plaintiff seeks to reduce is for $1,843.88, and is held by the Medical College of Virginia. Four other medical providers are owed a total of $2,353.94, with their individual bills ranging from a low of $15.90 from Libbie-Monument Radiology Associates, to a high of $2,233.64 from Medical College of Virginia Associated Physicians. In addition to the unpaid medical bills, plaintiff must also pay his lawyer and his guardian ad litem a total of $23,750, which is 25% of the settlement amount — a voluntary reduction from the one-third fee provided for by contract, plus $1,741.27 in litigation expenses. In all, unless the court reduces one or both of the Commonwealth's liens, plaintiff will receive a total net settlement of $38,184.21, which includes the $4,000 medical payments coverage. It is plaintiff's request that both the Medicaid lien and the Medical College of Virginia lien be reduced to zero. The Commonwealth opposes any reduction.[1]

The Commonwealth first argues that any reduction at all is inappropriate because the statute requires plaintiff's lawyer to make a "good faith effort to negotiate a compromise" of the lien amount, and plaintiff's lawyer has refused to accept any reduction in the Medicaid or Medical College of Virginia lien other than a reduction to zero. Such inflexibility, says the Commonwealth, shows a lack of good faith by plaintiff's lawyer. I disagree.

What constitutes a good faith effort to compromise a lien necessarily varies from case to case. In one case, where a plaintiff's net recovery is large and the lien is small, insistence on reducing the lien to zero might be unreasonable. In another case, where a refusal to reduce a lien to zero would result in a net recovery of almost nothing, insistence on reducing the lien to zero might not only be reasonable, it might be the only choice that a competent lawyer has. Here, considering the seriousness and per-

---

[1] Medicaid and Medical College of Virginia were separately represented at the hearing. Even so, the court feels that their interests are identical enough to refer to them collectively as "the Commonwealth."

manency of plaintiff's injuries, the fact that the Medicaid lien, if not reduced, will wipe out nearly half of plaintiff's net recovery, and the fact that the Medical College of Virginia has already been paid nearly $51,000 through insurance, the court is unwilling to say that plaintiff's lawyer's efforts to negotiate the liens to zero were not in good faith. In fact, I find that they were in good faith. Of course, it is still up to the court to determine whether such a reduction, or any reduction, is appropriate.

As this court has previously observed, § 8.01-66.9 provides little guidance for determining whether, or by how much, to reduce a lien. *See Mason v. Blue*, 22 Va. Cir. 422, 430 (1991) ("[T]he only guidance which has been given to assist the court in determining what factors it should consider in deciding how, or even whether, such relief is warranted, is the general doctrine of the 'equities of the case'."). In *Mason*, the settlement was for $11,000. Without a reduction of liens, plaintiff's net recovery would have been $430.21. Even with a reduction in liens, his net recovery was only $1,646.81. While the injuries in the present case are unquestionably more serious than those in *Mason*, no lien reduction is needed here to leave plaintiff with considerably more than was received by the plaintiff in *Mason*. And the fact remains that the Commonwealth did provide services to, and made payments on behalf of, the plaintiff. The Commonwealth is entitled to be paid.

In *Barreca v. Tillery*, 34 Va. Cir. 36 (1994), this court was asked to reduce to zero a Medicaid lien of about $150,000 in a case that was settled for $93,000. In that case, plaintiff received injuries in a diving accident which made her a quadriplegic. After adjusting certain other items, including plaintiff's attorneys' expenses, and even though it meant plaintiff would receive only a little over $29,000 as a net recovery, this court still refused to reduce the Medicaid lien to zero. Instead, the lien was reduced to $10,000. Here, even without any reduction at all, plaintiff will receive a greater net recovery than Ms. Barreca.

It must also be noted that plaintiff's net recovery in this case will be placed in a "special needs trust" to be established under 42 U.S.C. § 1396p, and the Virginia Plan for Medical Assistance, § VR 460-03-2.6109. What that means is that none of the proceeds will be available to pay for plaintiff's future medical needs. Thus, it is very likely that the Commonwealth, either through Medicaid or one of its other programs, institutions, or departments, will be called upon again to provide services to plaintiff, or to pay for services provided by others. It is appropriate, then, that while funds are available, and in light of the fairly significant net recovery which

plaintiff will receive even without a reduction, that the Commonwealth be reimbursed for the services already provided, and for the payments already made. Neither of the Commonwealth's liens will be reduced.