# CIRCUIT COURT OF THE CITY OF RICHMOND

McCoy Ross

v.

Leroy Greene

March 31, 1998

Case No. LB-674-4

BY JUDGE RANDALL G. JOHNSON

This personal injury action is before the court on plaintiff's motion pursuant to Va. Code § 8.01-66.9 to reduce the liens of several creditors and to apportion the proceeds of a settlement he has reached with defendant. Section 8.01-66.9 generally provides that when the Commonwealth of Virginia or one of its departments, hospitals, or other institutions renders or pays for medical services rendered to a person who subsequently recovers damages from a tortfeasor who caused the injury or injuries for which such services were rendered, the Commonwealth and such department, hospital, or other institution has a lien on the recovery. The last paragraph of the statute provides:

> The court in which a suit by an injured person or his personal representative has been filed against the person, firm, or corporation alleged to have caused such injuries or in which such suit may properly be filed, may, upon motion or petition by the injured person, his personal representative or his attorney, and after written notice is given to all those holding liens attaching to the recovery, reduce the amount of the liens and apportion the recovery, whether by verdict or negotiated settlement, between the plaintiff, the plaintiff's attorney, and the Commonwealth or such Department or institution as the equities of the case may appear ... .

Plaintiff's settlement is for $50,000.00. The lien held by the Commonwealth under § 8.01-66.9 is for services rendered at Medical College of Virginia Hospital (MCV) and is in the amount of $33,831.99. Also holding liens on plaintiff's recovery for services rendered in connection with the accident involved in this case are plaintiff's lawyers: $16,666.67 in fees and $1,948.11 in expenses and costs; MCV Associated Physicians, which in spite of the "MCV" part of its name is not an agency or institution of the Commonwealth, whose charges for physicians' services rendered to plaintiff total $8,678.00; and Richmond Ambulance Authority, which charged $474.50 for plaintiff's ambulance ride from the accident scene. Also relevant to plaintiff's request is $18,220.00 owed by plaintiff to the Commonwealth of Virginia's Department of Social Services Division of Child Support Enforcement (DCSE) for unpaid child support unrelated to the present action.[1]

The court has before it two separate proposals for reducing liens and distributing the settlement proceeds. One is offered by MCV and DCSE, who will be referred to collectively as "the Commonwealth." The other is offered by plaintiff. Both proposals provide for the full payment of plaintiff's lawyers' fees, everyone agreeing that plaintiff's lawyers did an outstanding job of obtaining maximum recovery, 100% of the available insurance coverage, in a difficult case. The Commonwealth does propose, however, that the attorney's lien for expenses and costs be reduced by $129.00. Both proposals also provide for no payment to plaintiff, plaintiff wishing instead to pay off as much of his debt as possible. There are, however, two major differences in the proposals. First, even though § 8.01-66.9 does not provide for the reduction of non-medical Commonwealth liens, the Commonwealth proposes paying DCSE only $9,800.00, which is just over one-half the amount of DCSE's lien. The Commonwealth also proposes reducing the liens of MCV Associated Physicians and Richmond Ambulance Authority. By reducing those three liens, MCV will have a larger share of the settlement proceeds; specifically, about $11,500.00 more than it would receive under plaintiff's proposal. Plaintiff proposes paying DCSE and the other lienholders, other than MCV, the entire amounts of their liens. Second, under the Commonwealth's proposal, MCV will waive all of its charges that are not paid out of the settlement proceeds, a savings to plaintiff of $12,528.38. Under plaintiff's plan, he would still owe money to MCV after the settlement proceeds are distributed.

---

[1] The parties' written submissions show DCSE's claim to be $15,564.63. The $18,220.00 is the amount stated at the hearing to be correct. It is the amount that will be used by the Court.

At the first hearing on plaintiff's motion,[2] plaintiff's counsel gave the reason for plaintiff's request. Under Virginia law, plaintiff's driver's license and other licenses may be suspended for his failure to pay child support. *See, e.g.*, Va. Code §§ 46.2-322(B) and 63.1-263.1. Thus, even though plaintiff's proposal means plaintiff would owe $12,528.38 more to all of his creditors than he would owe under the Commonwealth's plan, plaintiff would still rather pay all of his child support arrears so that he will not lose his licenses.

On the other hand, the court is aware of what might be at stake if the entire DCSE debt is paid out of the settlement proceeds. Specifically, and although there is nothing before the court to indicate that plaintiff plans to file bankruptcy, the fact is that MCV's claim can be discharged in bankruptcy. DCSE's claim cannot be. Thus, paying only a portion of DCSE's claim now will not prevent DCSE from trying to collect the balance even if bankruptcy protection is sought. That is not true for MCV. In spite of this possibility, plaintiff's proposal will be approved.

First, the court rejects the Commonwealth's proposal to reduce the liens of MCV Associated Physicians and Richmond Ambulance Authority. While § 8.01-66.9 states that after written notice is given to "all those holding liens attaching to the recovery," the court may "reduce the liens," it is the court's view that only those liens created by § 8.01-66.9 and the lien of the attorney can be reduced by the court.

In *Commonwealth v. Smith*, 239 Va. 108, 387 S.E.2d 767 (1990), the court, while not specifically addressing the issue of whether non-Commonwealth liens could be reduced under § 8.01-66.9, left little doubt that the statute is limited to the liens addressed in it:

In 1972, the General Assembly enacted Code § 32-139.1, which gave the Commonwealth and its institutions a lien for medical services rendered to a patient, upon the patient's claim against a tortfeasor. Acts 1972, c. 481. That section, as amended, became Code § 8.01-66.9 in 1979. Acts 1979, c. 772. The lien given by that section has always been subject to the authority of the Attorney General, given by Code § 2.1-127, to compromise and settle the Commonwealth's interest, with the approval of the head of the appropriate institution and, in the case of claims over a stated amount, with the approval of the Governor.

Inevitably, a great many tort actions are settled only "at the courthouse door," on or very close to the day fixed for trial. Where the

---

[2] After the first hearing, the Court decided that another hearing was needed to clarify some of the issues raised in the parties' submissions.

plaintiff's claim is encumbered by a Commonwealth's lien under Code § 8.01-66.9, it would be nearly impossible to obtain the requisite approvals within the executive branch of government in time to consummate a settlement before trial, unless efforts to do so were initiated well in advance. If plaintiff and defendant reached a tentative agreement shortly before trial, subject to the Attorney General's willingness to compromise the lien, the difficulty of obtaining the requisite approvals before the trial begins would leave the parties only the alternatives of a long continuance, necessitated by a crowded docket, or submission to the hazards of trial.

Because settlements, even last-minute ones, are very much in the public interest, the General Assembly, in 1981, added the last sentence to Code § 8.01-66.9. Acts 1981, c. 562. The effect of the amendment was to vest in the trial judge, in the circumstances specified by the statute, the authority, otherwise vested in the Attorney General, the Governor, and the appropriate department head by Code § 2.1-127, to compromise and reduce the Commonwealth's lien. The purpose of the amendment was to reduce expense and delay, to avoid litigation, and to promote settlements.

239 Va. at 111-12.[3]

In addition, the statute's provision that the court, after reducing the liens, is to apportion the recovery between "the plaintiff, the plaintiff's attorney, and the Commonwealth or such Department or institution as the equities of the case may appear," without any mention of an apportionment to other non-Commonwealth lienholders, is fairly conclusive evidence, in the court's view, that the court has no authority under § 8.01-66.9 to reduce the liens of creditors not specifically mentioned in the statute. Thus, the court has no authority to reduce the liens of MCV Associated Physicians or Richmond Ambulance Authority. In fact, but for DCSE's acquiescence in MCV's proposal, the court would hold that it has no authority to reduce DCSE's lien. DCSE, however, asks that its lien be reduced. Since plaintiff's attorney *is* specifically mentioned in the statute, the attorney's lien can be reduced even though it is not created by § 8.01-66.9.

Turning now to the specific proposals under consideration and the court's reason for approving the one offered by plaintiff, this court has on several occasions reduced the liens of state agencies in personal injury actions. In

---

[3] The "last sentence" referred to in the above passage is the one which now begins the last paragraph of the statute. A subsequent amendment added a different last sentence.

none of those cases did the court's order leave the plaintiff with no part of the recovery; that is, with no cash payment at all. In *Mason v. Blue*, 22 Va. Cir. 429 (1991), settlement was for $11,000.00. If all of the liens had been allowed to remain as they were, plaintiff's net recovery would have been $430.21. The court reduced the liens to allow plaintiff a net recovery of just under $1,700.00. Similarly, in *Nichols v. Gregory*, 31 Va. Cir. 302 (1993), a wrongful death case, liens of over $100,000.00 attached to a settlement of only $50,000.00. The court reduced the liens so that the five beneficiaries would receive a total net recovery of $16,737.40. In *Barreca v. Tillery*, 34 Va. Cir. 36 (1994), plaintiff's settlement in the amount of $93,000.00 was subject to over $200,000.00 in liens. The court order reducing the liens allowed plaintiff a net recovery of over $29,000.00. And in *Jones v. Ford Motor Co.* (1995), the court allowed a net recovery to plaintiff of $8,900.00 even though plaintiff's $35,000.00 settlement was much less than the $87,000.00 claimed as medical liens.

As can be seen, in none of the above cases did a plaintiff receive no net recovery. Indeed, the court would be hard-pressed to deny any plaintiff *some* portion of a settlement or verdict when, without plaintiff's efforts to obtain a recovery, no creditor would be paid *anything* other than what could be collected outside of the personal injury claim. It is only the present plaintiff's voluntary action of not seeking a net recovery here that prevents him from receiving one. In other words, if instead of making the request he makes, plaintiff had asked the court to reduce liens in such a way as to allow him at least some net recovery, the court cannot imagine that his request would have been refused. Plaintiff then could have paid his net recovery to DCSE without any ability of the Commonwealth to object. In fact, what is really in dispute in this case is approximately $8,500.00; that is, plaintiff proposes to pay DCSE about $8,500.00 more than the Commonwealth wants DCSE to be paid. Since the court would have certainly allowed plaintiff a net recovery of at least that much if he had requested it, the court will not punish plaintiff for asking instead that such amount be paid directly to DCSE. While this does not insulate MCV from having its claim eventually discharged in bankruptcy, the situation would be no different if plaintiff had sought and received a net recovery. Accordingly, the court will order that DCSE's entire claim be paid out of the settlement proceeds.

The remainder of the parties' proposals relate to the liens of the non-Commonwealth entities. Specifically, plaintiff proposes that MCV Associated Physicians be paid $3,089.00 of its $8,678.00 bill and that Richmond Ambulance Authority be paid its entire bill of $474.50. The Commonwealth

proposed at the first hearing that Associated Physicians be paid only $409.68 and that Richmond Ambulance be paid nothing. At the second hearing, the Commonwealth proposed that both of those entities be paid nothing. Neither of those entities, however, is an agency of the Commonwealth. Their liens are set elsewhere in the Code. And as was discussed above, neither of those liens can be reduced by the court under § 8.01-66.9. Accordingly, each of those entities will receive the full amount of its lien.

Virginia Code § 8.01-66.2 sets the lien for physicians at $500.00. Associated Physicians' bill lists nine physicians as having rendered services to plaintiff as a result of the accident at issue here. Four of those physicians submitted bills of more than $500.00, so they will each receive that amount out of the settlement. The other five rendered bills for amounts less than $500.00. They will receive the full amounts of their bills. The total for all nine physicians is $3,089.00. That amount will be paid to Associated Physicians out of the settlement. With regard to Richmond Ambulance Authority, Virginia Code § 43-63.1 limits its lien to $50.00. That is the amount it will receive.

Finally, the Commonwealth asks that the lien of plaintiff's lawyers for costs and expenses be reduced from $1,948.11 to $1,819.11. The court has reviewed the items of costs and expenses set out by plaintiff's lawyers and concludes that they are all reasonable and properly recoverable. They will not be reduced.

For all of the reasons stated above, the court will order the following payments out of the settlement proceeds:

| | | |
|---|---|---|
| Jay Tronfeld & Associates | | |
| Attorneys Fees | $16,666.67 | |
| Expenses and Costs | 1,948.11 | |
| | | $18,614.78 |
| Division of Child Support Enforcement | | 18,220.00 |
| Medical College of Virginia | | 10,026.22 |
| MCV Associated Physicians | | 3,089.00 |
| Richmond Ambulance Authority | | 50.00 |
| TOTAL | | $50,000.00 |